IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DAVID A. DEMEYER                                                              PLAINTIFF

v.                                    CIVIL NO. 08-3038

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, David A. DeMeyer, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on October 27, 2003, alleging an inability to work since May 1, 1995, due to scoliosis, back and neck pain, degenerative arthritis, gastritis, hyperlipidemia, fatigue and depression, . (Tr. 13, 53-56, ).[1] For DIB purposes, plaintiff maintained insured status through December 31, 1996. (Tr. 13). An

---

[1] The Court notes plaintiff's application for SSI on October 27, 2003, was approved as the ALJ found plaintiff was disabled as of April 29, 2003. SSI benefits are not payable for the period prior to the date of the application and plaintiff did not appeal the ALJ's decision regarding his SSI application. See *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R.§§ 416.330, 416.335

Case 3:08-cv-03038-JRM   Document 9   Filed 09/24/09   Page 2 of 12 PageID #: 87

administrative hearing was held on September 19, 2006, at which plaintiff appeared with counsel and testified. (Tr. 236-294). A vocational expert and plaintiff's wife also testified at this hearing.

By written decision dated November 3, 2006, the ALJ found plaintiff was not disabled prior to April 29, 2003, but that plaintiff became disabled on April 29, 2003, and remained disabled through the date of the decision. (Tr. 13, 21). The ALJ found since April 29, 2003, plaintiff has had the following severe impairments: rigid congenital thoracic kyphoscoliosis; retro-scapular bursitis accompanied by a chronic strain of his lower shoulder girdle muscles; and neurocognitive dysfunction due to chronic pain. (Tr. 15). However, after reviewing all of the evidence presented, she determined that since plaintiff's alleged onset date of disability, plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 17). The ALJ found that prior to April 29, 2003, plaintiff retained the residual functional capacity (RFC) to lift and/or carry twenty pounds occasionally, ten pounds frequently; to sit for six hours in an eight-hour workday; and to stand and/or walk for six hours in an eight-hour workday. (Tr. 18). The ALJ found that plaintiff was unable to engage in forceful use of his right dominant arm and that he could only occasionally reach overhead and reach to his side with his right arm. (Tr. 18). With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a cashier II and an assembler prior to April 29, 2003. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 8, 2008. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 2). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 6,8).


AO72A (Rev. 8/82)

**II.     Evidence Presented:**

At the time of the administrative hearing on September 19, 2006, plaintiff testified he was forty-five years of age and had earned his general equivalency diploma (GED). (Tr. 241). The record reflects plaintiff's past relevant work consists of work as a janitor, a pizza cook, a freezer room worker, and a landscaper. (Tr. 64-71, 280-282).

The medical evidence during the relevant time period of May 1, 1995, through December 31, 1996, reflects the following. On June 4, 1995, plaintiff entered the North Arkansas Medical Center emergency room with a fish hook stuck in is arm. (Tr. 131-132). Plaintiff was instructed to follow up with Dr. Van Ore soon and to keep his wound dry. Plaintiff was also given some Darvocet N-100 for pain.

On March 13, 1996, plaintiff entered the North Arkansas Medical Center emergency room complaining of pain in the mid lower pelvic area and pain with sitting for the past three days. (Tr. 127-130). Plaintiff reported he felt constipated so he took laxatives and had diarrhea but he still felt blocked. Plaintiff was diagnosed with pelvic pain and prostatitis and prescribed Cipro. Plaintiff was to see Dr. Van Ore in twenty-four hours to make sure that he was getting better. (Tr. 130). Plaintiff was to return to the emergency room if his condition worsened.

Subsequent medical evidence dated May 17, 1997, through February 2, 2006, reveals plaintiff was treated for severe mid thoracic scoliosis and chronic back pain, arthritis, neck pain, depression, fatigue, gastrointestinal problems, chest pain, hyperlipidemia and polyuria. (Tr. 109-125, 140-163, 165-169, 180-188, 190-223, 225-229).

**III.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A.     **The Sequential Evaluation Process:**

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled prior to December 31, 1996, his date last insured. Defendant argues substantial evidence supports the ALJ's determination.

**A.    Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 1996. Regarding plaintiff's application for DIB, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of May 1, 1995, his alleged onset date of

disability, through December 31, 1996, the last date he was in insured status under Title II of the Act.

In order for plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

**B.**  **Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320,

1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

Regarding plaintiff's back impairment, the ALJ noted plaintiff had been diagnosed with and treated for his back impairments since at least May of 1997. The ALJ found the medical evidence revealed minimal, conservative treatment for episodic back pain prior to April 29, 2003. We note, conservative treatment is inconsistent with disabling pain. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998); *See Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). The ALJ noted the medical evidence reveals plaintiff complained of significant back pain from May of 1997 to February of 1998; however after plaintiff was started on Amitriptyline in February of 1998, there were no ongoing complaints of significant back pain until April 29, 2003. The ALJ noted that in May of 1997, plaintiff reported that he had been working hard to Dr. Victor S. Chu. (Tr. 162). The medical evidence reveals that in March of 2001, Dr. Thomas S. Leslie, plaintiff's treating physician, noted that with exception of plaintiff's abdominal complaints everything else was fine. (Tr. 153). The ALJ noted in October of 2001 and January of 2002, Dr. Leslie noted plaintiff was doing well. (Tr. 151, 157). In April of 2003, the medical records show plaintiff complained of severe pain and that was supported by plaintiff's reports to Dr. Alice Martinson in July of 2004, that he had been experiencing significant discomfort for the previous year. (Tr. 168). While the record clearly shows plaintiff has a severe back impairment, we find substantial evidence to support the ALJ's determination that plaintiff's back impairment was not disabling prior to the expiration of his insured status on December 31, 1996.

The ALJ also addressed plaintiff's alleged disabling depression prior to December 31, 1996. The ALJ noted plaintiff was started on an antidepressant in May of 1997, but she found no evidence that plaintiff ever saw a mental health professional or that he ever required hospitalization for a mental impairment. (Tr.162); *See Rose v. Apfel*, 181 F.3d 943, 944-45 (8th Cir. 1999) (although claimant received outpatient psychiatric treatment and was diagnosed as having depression, depression was not disabling because there was no evidence of problems with concentration, persistence, or pace, of deterioration in work situation, or of related limitation of daily activities).

The ALJ also found no evidence that plaintiff experienced disabling functional limitations as a result of his depression prior to his date last insured. The ALJ noted plaintiff was able to take care of his personal needs, engage in household chores, shop for groceries and clothes, go to the bank and post office, prepare meals, pay bills, use a checkbook, count change, drive unfamiliar routes, watch television, read, visit friends and relatives and fish. (Tr.72-76). Plaintiff testified since 1995, his wife had been working and he had been at home taking care of his three younger children. (Tr. 251, 253). Plaintiff testified he prepared meals for his children, took them to school or the bus stop and attended their school activities. (Tr. 262-264). Plaintiff also testified since 1995, he has worked about five hours a month for a friend who owned a marina and that his work consisted of gassing up boats, operating the cash register and sometimes stocking supplies.[2] (Tr. 257). Plaintiff testified in1995, he also helped a man build a house and that he was basically a "gopher." (Tr. 259-260). While the ALJ did not find

---

[2] Medical records show plaintiff listed "125 Marina" as his employer when he sought medical treatment to remove a fish hook from his arm in June of 1995. (Tr. 131).

plaintiff's part-time work to be substantial gainful activity, the ALJ did use this evidence to show plaintiff was able to get out and work around people which supports that ALJ's determination that plaintiff did not have a disabling mental impairment during the relevant time period.

The ALJ also noted plaintiff's gastrointestinal problems and bladder issues but found plaintiff did not seek on-going or consistent treatment for these impairments prior to the expiration of his insured status.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. As noted above, the ALJ found that prior to plaintiff's date last insured he was able to take care of his three younger children including taking them to their school activities and events, to take care of household chores, to work at a marina about five hours a month, to help someone build a house by acting as a gopher and to drive, shop for groceries and do errands. This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain prior to December 31, 1996. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store).

With regard to the testimony of plaintiff's wife, the ALJ properly considered her testimony but found it unpersuasive. (Tr. 19). This determination was within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he was unable to engage in any gainful activity during the relevant time period. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may

AO72A
(Rev. 8/82)

cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

**C.**     **RFC Assessment:**

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform light work prior to the expiration of his insured status. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, plaintiff's subjective complaints, and his medical records when determining plaintiff could perform light work with some limitations prior to April 29, 2003. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on his activities during the relevant time period that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

**D.**     **Hypothetical Proposed to Vocational Expert:**

Plaintiff also contends that the hypothetical question proposed to the vocational expert did not encompass all of plaintiff's limitations. After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments did not preclude him from performing other work as a cashier II and an assembler during the time period in question. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of September 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)